Filed 4/14/21  P. v. Roberts CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHERRI BRIANA ROBERTS,<br><br>        Defendant and Appellant. | A160419<br><br>(Mendocino County<br>Super. Ct. No. SCUK CRCR 20-34073) |

Defendant Cherri Briana Roberts appeals from a judgment sentencing her to 16 months in county jail after she pleaded no contest to one count of felony vandalism (Pen. Code, § 594, subd. (b)(1)).[1]  Defendant filed a notice of appeal and requested a certificate of probable cause, which the trial court granted.  Her counsel has filed a brief raising no issues, but seeking our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Defendant was informed of her right to file a supplemental brief but has not done so.  Upon independent review of the record, we conclude no arguable issues are presented for review and affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

In mid-January 2020, a Ukiah Community Service Officer notified the victim that someone had broken the windshield and left window of his (the victim's) car. The officer "noticed a rusty wrench" next to the car. The vehicle had been "struck approximately five times," and the estimated damage was "approximately $600." The victim identified defendant as a possible suspect explaining, "she had stalked" and "harassed him for several years," "believed she was in a relationship with [him]," "would often yell and curse at [him] when he walked to and from work," and "had written a five-page letter to him and placed it on [his work] van," in which she "wrote about their relationship and that she had broken up with him."

When questioned about the vandalism, defendant "initially denied any involvement but later said it was possible her alter-ego had been responsible." She could not recall the incident but "acknowledged she is familiar with [the victim]," "believed he had stalked her," and admitted that she had "recently found" the wrench that was found near the victim's vehicle and had been keeping "it for self-defense."

The district attorney filed a complaint alleging one count of felony vandalism and that defendant had a prior conviction. After initially pleading not guilty, defendant later entered a no contest plea to felony vandalism with a "no prison promise," and the People agreed to dismiss the prior conviction allegation. Defense counsel stipulated that a factual basis for the no contest plea existed. The court accepted the plea, finding defendant had made a "knowing and intelligent waiver of her rights and her plea was freely and voluntarily made."

At the next hearing, defense counsel requested a continuance for the sentencing hearing, explaining a mix up regarding the date of the probation

interview had occurred and informing the court defendant was currently on a Welfare and Institutions section 5150 hold.

Prior to the sentencing hearing, probation interviewed defendant. She stated she suffered from "chronic depression and that she is 'wacked.' " When asked what she meant, defendant stated " 'back in the day' she was schizophrenic; however, now '[she's] just wacked.' " In a "prior Pre-Sentence Investigation report from 2009, the defendant indicated she had been diagnosed with schizophrenia, manic bi-polar, and schizoaffective disorder." She admitted to a "history of alcohol consumption," but maintained "in recent years, she has been 'laying low' with her alcohol consumption." Additionally, she admitted to a history of substance abuse, including using marijuana, methamphetamine, LSD, cocaine, and psilocybin mushrooms.

Probation noted defendant had "made odd statements to the investigating law enforcement officer which suggest possible mental health issues." The probation officer stated, "[a]lthough, this Officer is not a licensed clinician, it is Probation's belief [defendant] continues to suffer from psychological impairments, based on her behavior during the instant offense and interview with Probation." However, probation "did not have any psychological records or evaluations to review pertaining to [defendant's] mental health condition." It was the department's "belief that her mental health will need to be addressed if she is to have the best chance at successful rehabilitation," and while "challenging, Probation is optimistic she can overcome this." Taking "the circumstances of this case, the victim's statement, and [defendant's] social history," probation recommended three years' formal probation.

At the sentencing hearing, defendant was in custody because she had an "open misdemeanor" and "new probation violations," and probation now

recommended "probation be denied or violated [and] that [defendant] receive the aggravated term in this case."

Defendant herself was now rejecting probation and requesting a "low term." Her counsel stated that defendant "has the insight to know that what with her homelessness, her mental health issues, . . . she would probably have a real difficult time conforming with the mandates of her probation order," and she therefore wanted a "terminal sentence." Defense counsel acknowledged defendant's "lengthy criminal history, 52 misdemeanors," and a felony conviction for assault but argued her "mental health challenges, her homelessness, all of her challenges should be given a lot of weight" in mitigation. Counsel went on to state, "I know the victim was not an initiator or willing participant in anyway or an aggressor or provoker, but in [defendant's] mind he was. I know it's not to excuse her behavior, it's just looking at [defendant] and what she genuinely and honestly believes." Defendant's "mental health history is well documented" but counsel hoped "that while she's in the jail [defendant] will take her medications and participate in the classes" offered to help her.

The People stated they were "very aware of [defendant's] mental health issues" and that based on the case "this should be an aggravated case," but "based on the circumstances," the People sought the midterm.

The court noted defendant was "rejecting probation," and denied probation. In aggravation, the court cited defendant's lengthy criminal history, including crimes of violence; in mitigation, the court noted defendant "suffers serious mental health issues." The court sentenced defendant to the low term, imposed a $300 restitution fine but ordered the fine to run "concurrent with her prison commitment and be deemed paid in full,"

4

imposed and stayed the $40 security fee and the $30 conviction assessment fee, and set a victim restitution hearing.

## DISCUSSION

Defendant filed a notice of appeal and requested a certificate of probable cause, which the trial court granted. In the request for a certificate, defendant stated, "Because I might have been intoxicated and I have disociave [*sic*] idenity [*sic*] disorder A.K.A. D.I.D. meaning Cherri didn't do this but one of my others did."

It is unclear exactly what defendant means to challenge with her statement. However, it is clear that her counsel, the trial court, the probation department, and the prosecution were all well aware of defendant's "serious mental health issues."

To the extent she is asserting she was incompetent to enter her plea, the record does not suggest a reasonable doubt as to defendant's competence that would have required the trial court to order a section 1368 hearing.[2]

A defendant is competent to stand trial or enter a plea when she possesses a " 'sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against [her].' " (*Dusky v. United*

---

[2] Section 1368 provides, "If, during the pendency of an action and prior to judgment, or during revocation proceedings for a violation of probation, mandatory supervision, postrelease community supervision, or parole, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. . . . At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time." (§ 1368, subd. (a).)

*States* (1960) 362 U.S. 402, 402.) It is well-established that a defendant who is unable to understand the nature of the criminal proceedings or to assist counsel in conducting a defense in a rational manner is incompetent to stand trial. (§ 1367.)[3] Due process requires a trial court to conduct a hearing, sua sponte, " 'whenever the court is presented with substantial evidence of incompetence.' " (*People v. Ghobrial* (2018) 5 Cal.5th 250, 269 (*Ghobrial*); § 1368.) That is evidence that raises a reasonable doubt as to the defendant's competence to stand trial. (*Ghobrial*, at p. 269.) "[T]he evidence must bear on the defendant's competency to [enter a plea], rather than simply establish the existence of a mental illness that could conceivably affect his ability to understand the proceedings or assist counsel. [Citation.] '[M]ore is required to raise a doubt than mere bizarre actions [citation] or bizarre statements . . . .' " (*Id.* at p. 270; *Id.* at p. 271 [" '[E]ven a history of serious mental illness does not necessarily constitute substantial evidence of incompetence that would require a court to declare a doubt.' "].)

Here, the record indicates defendant was aware of her rights and understood the consequences of her plea. She executed a waiver of rights, and the trial court questioned her directly to ensure she understood the proposed disposition and entered into the plea freely and voluntarily. The record shows she was able to communicate with her counsel. Indeed, in her decision to reject probation, defense counsel stated her belief that defendant

---

[3] Section 1367, subdivision (a) provides, "A person shall not be tried or adjudged to punishment or have their probation, mandatory supervision, postrelease community supervision, or parole revoked while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

had "the insight to know that what with her . . . mental health issues, . . . she would probably have a real difficult time conforming with the mandates of her probation order." "The question is whether defendant's mental illness interfered with [her] ability to understand the nature and purpose of the criminal proceedings or to communicate with [her] counsel about [her] defense." (*Ghobrial, supra,* 5 Cal.5th at p. 271.) The record here demonstrates the answer to that question is no. Furthermore, defense counsel never sought a competency hearing. And, while counsel's " 'failure to seek a competency hearing is not determinative [citation], it is significant because . . . counsel interacts with the defendant on a daily basis and is in the best position to evaluate whether the defendant is able to participate meaningfully in the proceedings.' " (*Id.* at p. 273.) Counsel was aware of defendant's mental health challenges, and at the hearing on the felony plea, counsel was specifically asked by the trial court, "In your opinion does [defendant] understand her rights and the consequences of waiving those rights?" Counsel replied, "Yes." "Under the circumstances, the trial court reasonably could have ascribed some weight to trial counsel's failure to raise concerns about defendant's competence at any point during the proceedings." (*Ibid.*)

To the extent defendant challenges her counsel's representation, there is no basis in the record to support it. Defendant did not request alternate representation during the plea process, nor does her certificate provide any indication as to whether or how counsel was ineffective. Counsel for defendant negotiated a plea and argued for a lower jail term in part because of defendant's mental health issues, which the trial court accepted over the prosecution's request for the midterm and probation's request for the aggravated term. The record shows defendant received able representation.

7

## DISPOSITION

Upon independent review of the record, we conclude no arguable issues are presented for review and affirm the judgment.

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Sanchez, J.

A160419, People v. Roberts

9